IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALAN EUGENE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:24-cv-197-RAH |
| | ) [WO] |
| STEVE MARSHALL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Death-row inmate Alan Eugene Miller sues Defendants (collectively, "the State") to challenge his impending execution. After the State's failed attempt to execute him by lethal injection in 2022, Miller fought for and successfully achieved his once-preferred method of execution—nitrogen hypoxia. Faced with the reality of his choice after the State moved to set his execution by nitrogen hypoxia, he now claims the State is violating the First, Eighth, and Fourteenth Amendments to the United States Constitution. The State moves to dismiss all claims against it, and Miller resists. The motions to dismiss will be granted in part.

### II. BACKGROUND

The Complaint (doc. 1) is the operative pleading, and Miller filed it on March 29, 2024, when the Alabama Attorney General's motion for an order authorizing the Alabama Department of Corrections (ADOC) to carry out Miller's death sentence was pending in the Alabama Supreme Court. Later, over Miller's opposition, the Alabama Supreme Court granted the Attorney General's motion. The Governor then

set Miller's execution for a thirty-hour time frame between September 26, 2024, and September 27, 2024.

Miller brings three causes of action against the State: violation of his right to freedom of speech and to petition the government under the First Amendment (Count One); violation of his right to equal protection under the Fourteenth Amendment (Count Two); and violation of his right to freedom from cruel and unusual punishment under the Eighth Amendment (Count Three).

In support of his claims, Miller's Complaint begins with a description of his previous method-of-execution litigation. (Doc. 1 at 6–8 (referencing *Miller v. Hamm*, No. 2:22-cv-506-RAH (M.D. Ala. 2022).)  In that litigation, Miller sued Alabama Attorney General Steve Marshall, Hamm, and Warden of Holman Correctional Facility Terry Raybon to challenge his looming execution by lethal injection, and he repeatedly advanced his desire for an execution by nitrogen hypoxia instead.  Miller settled that case after the State was unsuccessful in executing him by lethal injection with an agreement that any future execution attempt would be by nitrogen hypoxia.

Relevant to Counts One and Two here, before the lethal injection litigation was settled, Miller "sought discovery in [his ongoing federal] litigation to expose the State's failures" after the lethal injection attempt. (*Id.* at 39.)  By Miller's account, the media reports stemming from his lawsuit "painted the State and its officials, Defendants, in an unfavorable light." (*Id.*)  Miller's public statements included his belief that "the execution team was incapable of successfully establishing intravenous access." (*Id.* at 40.)  In other words, he contended the State's failure to execute him "by lethal injection was the result of the incompetence of the execution team." (*Id.*)  Miller now says his upcoming execution is the State's attempt to "silence the [last remaining] witness[] to the entirety of the failed execution attempts who are not employed by the State[.]" (*Id.* at 41.)  In his view,

2

the State is retaliating against him in violation of the First Amendment by seeking to execute him now, ahead of 16 other condemned inmates who voluntarily elected nitrogen hypoxia and whose conventional appeals are exhausted, because the State's "motivating factor" was Miller's "public statements and lawsuit." (*Id.* at 33, 41, 44.) He says "[t]his adverse action will deter other inmates from engaging in similar protected speech for fear of being executed much sooner than they" otherwise would have been. (*Id.* at 43.)

On the same score, Miller alleges the State, specifically General Marshall, "has a pattern and practice of employing a 'first in, first out' methodology based on the date in which a person's conventional appeals have been exhausted, subject to the availability of the method of execution elected by the person sentenced to death." (Doc. 1 at 32.) And, again according to Miller, the State violated that "pattern and practice" by moving the Alabama Supreme Court for an execution warrant "after the [condemned inmate's] conventional appeals have been exhausted" ahead of the 16 other inmates on General Marshall's list who chose nitrogen hypoxia and whose conventional appeals exhausted before his. (*Id.* at 32–33.) In Miller's view, the State's actions violate the Equal Protection Clause.

Germane to his Eighth Amendment claim in Count Three, Miller alleges he "has had intense psychological symptoms" which include the occasional onset of a "'twilight mode' where he loses track of time and dissociates from reality" because of the failed lethal injection. (Doc. 1 at 15.) He says he "experiences intrusive thoughts of the execution, even when he is trying not to think about" it, and he "has been dwelling on thoughts of being stabbed with needles." (*Id.*) Sometimes he "twitches or taps his hands together to try to calm down, and he has great difficulty sleeping." (*Id.*) Since the failed attempt, "Miller has not felt comfortable extending his arms away from his body" and "often keeps his arms and hands curled up tight on his chest." (*Id.* at 16.) Miller also recounts his version of witness and media

reports of Kenneth Eugene Smith's execution by nitrogen hypoxia a few months ago, emphasizing Smith's body movements after the nitrogen gas began to flow into the mask and that it took many minutes—as opposed to seconds—for the process to result in death. (*Id.* at 26–31.) He says the "one size fits all" nature of the execution mask will increase the possibility of air leakage during the execution and, together with the use of any "non-medical grade" nitrogen gas, will superadd pain. (*Id.* at 21–22.) Industrial as opposed to medical grade nitrogen gas, he alleges, "is not intended for human inhalation, and its impurities may cause superadded pain and suffering in a nitrogen hypoxia execution." (*Id.* at 21.) Miller claims the "use of non-medical grade gas can have a significant impact on a person, like [him], with a reactive airway disease such as asthma" because it "ha[s] different control levels in the amount of humidity (water vapor) in the gas" as compared to medical grade nitrogen gas. (*Id.* at 22.) He says the added humidity in medical grade nitrogen gas "results in increased tolerance of the gas by the cells in a person's airway, and decreases the discomfort of the person receiving the gas." (*Id.*)

Miller does not offer a different method of execution. Instead, he alleges six amendments to Alabama's current nitrogen hypoxia execution protocol (Protocol) that would significantly reduce the purported substantial risk of severe pain. (*Id.* at 47–48.) These include using "a sedative or tranquilizing medication in pill form before administering the nitrogen gas, to reduce thrashing movements that could further dislodge the mask;" medical grade nitrogen gas; a mask that fits Miller's "face and creates an airtight seal;" and a medical professional to place the mask on Miller's head and hold it in place, if necessary, while also supervising "the nitrogen flow rate during the execution[.]" (*Id.*)

### III. JURISDICTION AND VENUE

The court has original subject matter jurisdiction over Count Three pursuant to 28 U.S.C. § 1331, and jurisdiction over Counts One and Two will be discussed

below. Personal jurisdiction and venue are uncontested, and venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## IV. STANDARD OF REVIEW

The State has moved to dismiss Miller's claims under Federal Rule of Civil Procedure 12(b)(6). In ruling upon a Rule 12(b)(6) motion, a court considers only the allegations contained in the complaint and any attached exhibits. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* (alteration adopted) (citing Fed. R. Civ. P. 8(a)(2)).

## V. DISCUSSION

Together with a Rule 12(b)(6) attack against Miller's First and Eighth Amendment claims, the State asserts several other defenses: lack of standing, the

5

applicability of the *Younger*[1] abstention and *Rooker-Feldman*[2] doctrines, claim and issue preclusion, a jurisdictional bar on any of Miller's claims sounding in habeas, and sovereign immunity. Only some of them need be addressed to resolve the State's motions.

**A. Counts One and Two**

Miller asks the court to enjoin the State from executing him "prematurely" because he contends the State is retaliating against him after he engaged in protected First Amendment conduct and because the State is in violation of the Equal Protection Clause by attempting to execute him out of order. (Doc. 1 at 42–45, 48.) Since a grant of such relief would first require a determination that *now* is not the "appropriate time" to execute Miller, *see* Ala. R. App. P. 8(d)(1), this court lacks subject matter jurisdiction over Counts One and Two as alleged, and they will be dismissed.

Congress authorized federal district courts to exercise limited jurisdiction over cases and controversies brought under Article III of the Constitution. *See* 28 U.S.C. Pt. IV, Ch. 85; *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). Federal courts may act only within their subject matter jurisdiction. *Id.* at 409–10 (citations omitted). Taking action outside of it "unconstitutionally invades the powers reserved to the states to determine controversies in their own courts[.]" *Id.* at 410 (citations omitted). To avoid that danger, this court must "examine *sua sponte* [its] own jurisdiction over a case, notwithstanding the contentions of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citation omitted). "[I]t is the facts and substance of the claims alleged, not the jurisdictional

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

labels attached, that ultimately determine whether a court can hear a claim." *Id.* (citation omitted). *See also In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) (explaining that, in the context of a removal case, "[t]he reviewing court looks to the substance of the complaint, not the labels used in it").[3]

Miller argues there are federal questions at play in Counts One and Two. (Doc. 1 at 5 (citing 28 U.S.C. § 1331).) Count One, the First Amendment claim, states that "Defendant Marshall . . . select[ed] [] Miller for execution ahead of the sixteen people who also elected nitrogen hypoxia and whose conventional appeals were exhausted" in retaliation for "[Miller's] public statements and lawsuit about his failed execution[.]" (*Id.* at 42, 44.) Miller then repackages the same allegation into an equal protection claim in Count Two, stating that the "Defendants are treating [him] disparately from other similarly situated persons who elected to be executed by nitrogen hypoxia and whose conventional appeals have been exhausted." (*Id.* at 44–45.)

Consider first what Miller wants this court to decide. It may well be the merits of a retaliation and equal protection claim. But to do that, his theories require the court to first answer a threshold question: whether now is an "appropriate time" to execute him. Ala. R. App. P. 8(d)(1). In both Counts One and Two, Miller alleges that some ongoing harm or injury, packaged as two constitutional claims, means that executing him now would be "premature[]" and therefore unconstitutional. (Doc. 1 at 48.) He is challenging the *timing* of his execution. That is clear because the relief he seeks is a declaration that executing him now violates the First and Fourteenth Amendments, so the State should be enjoined from carrying out his death sentence until some unspecified later date. (*Id.* at 48–49.)

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Now some context. Under Alabama law, the Attorney General moves for an execution date with the Alabama Supreme Court. *See* Ala. R. App. P. 8(d)(1); Ala. Code § 36-15-1(2) (noting the Attorney General of Alabama "shall attend, on the part of the state, to all criminal cases pending in the Supreme Court"). Then, the condemned inmate is given the opportunity to object and state reasons why he should not be executed at that time. *See* Ala R. App. P. 27(a) ("Any party may file a response in opposition to a motion, . . . ."). After that, the Alabama Supreme Court decides whether it is the "appropriate time" to authorize the ADOC commissioner to carry out the death sentence. Ala. R. App. P. 8(d)(1). If it does, the Alabama Supreme Court then issues an order authorizing the execution. Otherwise, the Alabama Supreme Court can either deny the request or simply sit on it.

If error, whether constitutional or otherwise, lies in the Alabama Supreme Court's decision as to the appropriate time for the execution, the remedy is an appeal to the United States Supreme Court. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court[.]").

The Alabama Supreme Court decides in the first instance whether it is the "appropriate time" to execute Miller. And here, Miller asks for an injunction to kick his execution down the road because he believes it is "premature[]" to execute him in light of Counts One and Two. (Doc. 1 at 48.) The Alabama Supreme Court did consider Miller's First and Fourteenth Amendment arguments because Miller filed objections with the Alabama Supreme Court on those grounds. Still, the Alabama Supreme Court found that *now* is the "appropriate time" to execute Miller. (Doc. 28-2 at 12–16; doc. 39-4.) If Miller thinks the state court got it wrong, he can appeal the Alabama Supreme Court's decision to the United States Supreme Court, not this court. *See* 28 U.S.C. § 1257. Since Miller seeks prospective injunctive relief in Counts One and Two, he essentially asks this court to do precisely what he asked the

8

Alabama Supreme Court to do—conclude that because he allegedly suffered, and continues to suffer, some constitutional harm, now is not the "appropriate time" to execute him. This court cannot do so because it cannot decide this question of state law which follows a state jury's verdict convicting Miller of a criminal offense under state law. Counts One and Two will be dismissed for lack of subject matter jurisdiction.

## B. Count Three

### 1. Standing & Immunity

The Governor and the Attorney General raise standing and Eleventh Amendment immunity concerns. Since only Count Three remains, standing and immunity will be examined exclusively under that count.

The State makes passing references to the operation of Eleventh Amendment immunity as it concerns the Governor and Attorney General on Count Three. State officials sued in their official capacity for prospective injunctive relief are not immune from suit; *Ex Parte Young* says so. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing *Ex Parte Young*, 209 U.S. 123, 168 (1908)). In Count Three, Miller seeks prospective injunctive relief against all Defendants in their official capacities. The Eleventh Amendment will not stop him.

On standing, Defendants Hamm and Raybon do not contest that Miller can sue them in Count Three. The Governor and the Attorney General contend a ruling against them on Count Three concerning the constitutionality of the current nitrogen hypoxia protocol would not redress Miller's alleged injury because they do not carry out executions or adopt protocols to carry out each method; Hamm and Raybon do. Miller argues both individuals can redress his injury because the Governor can move the date of his execution and the Attorney General can ask the Alabama Supreme Court to vacate the execution warrant.

9

Article III of the Constitution limits the subject matter jurisdiction of federal courts to "cases and controversies." U.S. Const. art. III, § 2. "To have a case or controversy, a [plaintiff] must establish that he has standing, which requires proof of three elements." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)) (internal quotation marks omitted). Those three elements include, (1) an injury in fact that (2) is fairly traceable to the defendant's actions and is (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[E]ach element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) (quoting *Lujan*, 504 U.S. at 561).

The Governor and Attorney General do not directly dispute that Miller meets the first two elements of standing when analyzed under only Count Three. Miller has sufficiently alleged that he faces a concrete and particularized, imminent future injury—superadded pain resulting from an unconstitutional execution. *See Reeves v. Comm'r, Ala. Dep't of Corr.*, 23 F.4th 1308, 1317 (11th Cir. 2022), *injunction vacated by* 142 S. Ct. 742 (Mem.) (2022). That injury is fairly traceable to the Attorney General's decision to seek Miller's execution, and to the Attorney General's motion filed with the Alabama Supreme Court asking that court to authorize Miller's execution, which will be by nitrogen hypoxia using the State's allegedly unconstitutional Protocol. The Governor's decision to set his execution using the Protocol for a thirty-hour time frame between September 26 and 27, 2024, is fairly traceable to Miller's injury too.[4] Even though others (Hamm and Raybon)

---

[4] The Governor is certainly involved in and has a role in the execution process. Recall that in 2022, when issues arose with the State's recent attempts at lethal injection, the Governor declared

are charged with adopting the Protocol and carrying out executions, the future harm would not occur absent the actions of the Governor and Attorney General at various stages in the process. Miller's injury is most traceable to Hamm and Raybon, of course, but the Governor and Attorney General performed traceable acts too, even though a much slimmer thread connects their acts to Miller's claimed injury.

On redressability, Miller requests an injunction "prohibiting Defendants from executing [him] prematurely," a declaratory judgment that "[e]xecuting [him] via the same method used in [Kenneth Eugene Smith's execution] is a violation of [] Miller's rights under the Eighth Amendment[,]" and such "other and further legal and equitable relief as this Court deems just, and proper." (Doc. 1 at 48–49.) Redressability merely requires Miller to seek a "remedy that is likely to redress [his] injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). At this stage, he has done so. A declaration that the current Protocol violates the Eighth Amendment or an injunction enjoining the State from executing him using the current Protocol would redress his injury.

Although the Governor and Attorney General discuss redressability and mention standing in their arguments about why they are improper defendants in Count Three, their true argument turns on the legal availability of the relief the court might order them to provide if Miller were to succeed on his Eighth Amendment claim. Remember that standing questions justiciability, not the merits. *Reeves*, 23 F.4th at 1319 (citation omitted). The standing inquiry itself is not concerned with whether the relief Miller seeks from the Governor and Attorney General is ultimately barred by some other legal doctrine because "the authority of a court to fashion

---

a moratorium on executions pending a review of the State of Alabama's execution procedures. (Doc. 1 at 3.) Upon completion of that review, the Governor requested that the Alabama Supreme Court lengthen the amount of time the ADOC is given to perform an execution. (*Id.*) The Alabama Supreme Court obliged and changed the applicable rule at the Governor's request. (*Id.*)

11

certain relief or the legal availability of such relief go to the merits, and not justiciability." *Id. See also Moody v. Holman*, 887 F.3d 1281, 1287 (explaining that "the legal availability of a certain kind of relief" goes to the merits, not justiciability (quoting *Chafin v. Chafin*, 568 U.S. 165, 174 (2013)). All told, Miller has shown that "a favorable decision" from the court "would amount to a significant increase in the likelihood that [he] would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303–04 (11th Cir. 2011) (citation omitted). That is all Article III requires to satisfy the third element of standing.

Miller has sufficiently shown he has standing to sue all Defendants for prospective injunctive relief under Count Three at this early stage. Although Miller has not shown the Governor and Attorney General are at fault for any constitutional infirmity in the Protocol itself, they are appropriate parties to consider when crafting the equitable relief, if any, were Miller to succeed on Count Three. Whether the relief Miller seeks is proper against certain Defendants, if he is ultimately successful, is a question for another day.

**2. Plausibility**

The State contends Miller has failed to state a plausible Eighth Amendment claim because he did not sufficiently plead the Protocol gives rise to a substantial risk of serious harm, nor did he plead a feasible, readily implemented alternative method of execution.[5] Miller says he has sufficiently pled both, relying in large part on witness accounts from Kenneth Eugene Smith's execution.

The Supreme Court has established a legal framework to assess federal method-of-execution challenges brought under the Cruel and Unusual Punishments

---

[5] Unlike Counts One and Two, Count Three is an independent federal method-of-execution claim. Whether the Protocol violates the Eighth Amendment is a question distinct from the Alabama Supreme Court's consideration of whether *now* is the "appropriate time" to execute Miller.

12

Clause of the Eighth Amendment. *Bucklew v. Precythe*, 587 U.S. 119, 129–35 (2019) (referencing U.S. Const. amend. VIII). Much has been written about that framework but, reduced to its essence, Miller must plead two things to state a method-of-execution claim: (1) the challenged method of execution "presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and gives rise to sufficiently *imminent* dangers," meaning the State's chosen method gives rise to a "substantial risk of serious harm" to Miller that is "objectively intolerable" and "prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment"; and (2) "an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain," not merely an alternative that is "slightly or marginally safer." *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citations omitted) (emphasis in original) (alterations adopted and internal quotation marks omitted). The two elements facilitate a "comparison" between the State's chosen method and the condemned inmate's proposed alternative to assess whether the State's chosen method inflicts "gratuitous" pain or otherwise "cruelly superadds pain to the death sentence." *Bucklew*, 587 U.S. at 134, 136.

Miller argues the Protocol, in its current form, exposes him to a substantial risk of severe and superadded pain although feasible, readily implemented alternative methods of execution exist—like an amended Protocol—that would significantly reduce that risk. The Complaint is noticeably lean on factual detail supporting both *Glossip* elements, but Miller has just barely pled enough to render his claim plausible under *Iqbal* and *Twombly*. He tests the limits of a sufficient

method-of-execution pleading but Count Three may proceed for now, albeit with some skepticism.[6]

On *Glossip*'s first element, Miller alleges several problems with the Protocol—improper fit of the mask due to his body type and unique characteristics; the introduction of outside air into the mask; and the possible use of less than medical-grade nitrogen gas—that he says present risks that are sure or very likely to increase the time to unconsciousness and would expose him to "unnecessary pain and suffering, superadded disgrace, and a prolonged death[,]" as evidenced by the witness accounts of Kenneth Eugene Smith's execution. (Doc. 1 at 46–47.) Those accounts, according to the Complaint, describe how Smith "convulsed and seized violently" and "gasp[ed] for air" for "several minutes." (*Id.*) Miller appears to argue the same will happen to him if the Protocol is left as-is.

On *Glossip*'s second element, six feasible and readily implemented amendments to the Protocol will, in Miller's view, "significantly reduce a substantial risk of severe pain" when compared to the current Protocol. (*Id.* at 47.) The amendments include:

> (1) using a mask that fits Miller's face and creates an airtight seal; (2) using a medical professional, rather than unqualified correctional officers, to place the mask on Miller's face, and hold it in place if necessary; (3) using a medical professional, rather than unqualified correctional officers, to supervise the nitrogen flow rate during the execution; (4) having a medical professional, rather than unqualified correctional officers, present during the execution attempt, who can respond if the execution goes awry . . . ; (5) using medical grade nitrogen; and (6) using a sedative or tranquilizing medication in pill form before administering the nitrogen gas, to reduce thrashing movements that could further dislodge the mask.

---

[6] Smith, for example, focused his Eighth Amendment claim on the risk he would vomit into the mask. The parties and the court spent considerable time and effort litigating that issue. That risk, however, ultimately proved unfounded.

(*Id.* at 47–48 ¶193.)

The allegations, all taken as true at this point, "permit the court to *infer* more than the mere possibility of misconduct" and "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (emphasis added). Miller has pled that the Protocol could and will give rise to sufficiently imminent dangers and superadded pain in the form of prolonged time to unconsciousness, "several minutes of gasping for air[,]" and "violent[]" convulsions and seizures because of the introduction of impure nitrogen gas or outside air. (Doc. 1 at 46.) He has also alleged a feasible, readily implemented alternative method (his amendments to the Protocol) will "significantly reduce" the risk of severe pain. (*Id.* at 47.) Together, those dangers—as compared to Miller's proposed alternative method—plausibly amount to "a 'substantial risk of serious harm'—severe pain over and above death itself[,]" if assumed true. *Nance v. Ward*, 597 U.S. 159, 164 (2022). He has therefore pled a plausible Eighth Amendment claim, although barely, and the State's motions to dismiss Count Three on that basis will be denied.

## VI. CONCLUSION

Accordingly, it is **ORDERED** that the State's *Motions to Dismiss* (doc. 28; doc. 29; doc. 30) are **GRANTED in part and DENIED in part.** Counts One and Two of Miller's Complaint (doc. 1) are **DISMISSED without prejudice**. Count Three remains against all Defendants.

**DONE** on this the 11th day of June 2024.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE