**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

ALAN EUGENE MILLER,

*Plaintiff*,

v.

STEVE MARSHALL,
in his official capacity as Attorney General, State of Alabama,

KAY IVEY,
In her official capacity as Governor of the State of Alabama,

JOHN Q. HAMM,
In his official capacity as Commissioner, Alabama Department of Corrections,

TERRY RAYBON,
in his official capacity as Warden, Holman Correctional Facility,

*Defendants*.

Civil Action: No. 2:24-cv-00197-RAH

**CAPITAL CASE – EXECUTION SCHEDULED FOR SEPTEMBER 26, 2024**

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO**
**DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and any other applicable rule, Plaintiff Alan Miller ("Mr. Miller"), by and through his attorneys, hereby objects and responds to Defendants' First Set of Interrogatories (the "Interrogatories") issued to Mr. Miller in the above-captioned action (the "Action").

**GENERAL OBJECTIONS**

1. Mr. Miller responds to the Interrogatories, including the Definitions and Instructions, subject to the General Objections set forth herein. These limitations and objections, which form a part of Mr. Miller's response to each individual Interrogatory, are set forth herein to avoid the duplication and repetition of restating them for each individual response. The General

Objections may also be specifically referred to in Mr. Miller's responses to certain of the individual Interrogatories for purposes of emphasis and clarity. Failure to make a Specific Objection, however, should not be construed as a waiver of any General Objection.

2. Mr. Miller objects to the Interrogatories, including the Definitions and Instructions, to the extent they: (a) are overbroad or unduly burdensome; (b) are vague, ambiguous, duplicative, and/or cumulative, or otherwise do not identify with reasonable particularity the information sought; (c) call for information that is not relevant or proportional to the needs of the case; (d) seek to impose obligations on Mr. Miller beyond, or inconsistent with, those required by applicable law or rules; or (e) purport to seek information not within Mr. Miller's possession, custody, or control.

3. Mr. Miller objects to the definitions of the terms "Communicate," "Communication," "Mask," "Identify," "You," and "Your," to the extent those definitions are overbroad or vague, cause any request to be unduly burdensome, or otherwise cause any request to be subject to Mr. Miller's objections.

4. Mr. Miller objects to any factual assumptions, implications, and characterizations of facts, events, circumstances, or issues in the Interrogatories. Mr. Miller's responses herein are not intended to mean that Mr. Miller agrees with any factual assumptions, implications, or characterizations of facts, events, circumstances, or issues in the Interrogatories.

5. Mr. Miller objections and responses to the Interrogatories are made without waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories; (b) the right to object on any ground to information provided in response to the Interrogatories at any hearing or trial; or (c) the right to object on any ground at any time to a demand for further responses to the Interrogatories.

6. Mr. Miller objects to the interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, protection, or immunity. Any response or objection inconsistent with the foregoing is inadvertent and shall not constitute a waiver of any applicable privilege, protection, or immunity.

7. These objections and responses reflect Mr. Miller's present knowledge, information, and belief, and may be subject to change or modification based on further discovery or on facts or circumstances that may come to Mr. Miller's attention. Mr. Miller reserves the right to rely on any facts, documents, evidence, information, or other contentions that may develop or come to his attention at a later time and to supplement or amend these objections and responses at any time prior to any trial in this action. Mr. Miller further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

**SPECIFIC OBJECTIONS AND RESPONSES**

1. As to Plaintiff's pleaded alternative of a "mask that fits Miller's face and creates an airtight seal" (Doc. 1, ¶ 193), identify and describe each mask known to Plaintiff to fit his face and create an airtight seal, including the manufacturer, model number, and (if appropriate) size.

**RESPONSE**: Mr. Miller objects to this Interrogatory as overbroad and unduly burdensome. Mr. Miller further objects to the extent the Interrogatory assumes that Mr. Miller has access to masks while incarcerated at a maximum security prison. Subject to these objections, Mr. Miller states that the Allegro mask used by Defendants in nitrogen hypoxia executions might fit Mr. Miller and create an airtight seal around his face if, consistent with the mask manual, the mask is "properly fitted" on him and a "negative pressure user-seal check" occurs to determine whether "the facemask is sealing correctly."

2. As to Plaintiff's pleaded allegation that "medical and industrial grade nitrogen gas have different control levels in the amount of humidity (water vapor) in the gas" (Doc. 1, ¶ 84), explain and describe the minimum, acceptable amount of water vapor (in parts per million) Plaintiff contends is required for nitrogen gas to be acceptable for use in a judicial execution by nitrogen hypoxia.

**RESPONSE**: Mr. Miller objects to this Interrogatory as not relevant to his claims, vague, overbroad, and unduly burdensome. Mr. Miller further objects to the extent the Interrogatory seeks a narrative response that calls for an expert opinion. Subject to these objections, Mr. Miller states

that he does not presently have a position on the "minimum acceptable amount of water vapor (in parts per million) . . . required for nitrogen gas to be acceptable for use in a judicial execution by nitrogen hypoxia."

3. As to Plaintiff's pleaded alternative of a "using medical grade nitrogen" (Doc. 1, ¶ 193), identify each supplier of nitrogen gas known to Plaintiff that will knowingly provide medical-grade nitrogen (meeting the humidity and purity requirements Plaintiff contends is necessary to conduct a constitutional execution by nitrogen hypoxia for use in a judicial execution) to the Alabama Department of Corrections for use in a judicial execution.

**RESPONSE**: Mr. Miller objects to this Interrogatory as vague and overbroad, including because the term "supplier" is not defined. Mr. Miller further objects to the Interrogatory as unduly burdensome. Subject to these objections, Mr. Miller states the information requested is not presently known to Mr. Miller because Defendants have routinely taken the position that the names of "suppliers" cannot be disclosed to the public. *See, e.g.*, Dkt. 25 at 7–10; Dkt. 36 at 10–13.

4. As to Plaintiff's pleaded alternative of using "medical professionals" to place the mask on Plaintiff Miller's face (Doc. 1, ¶ 193), state in detail the minimum training, certifications, licensure, and/or experience that such "medical professionals" would have to possess to be qualified to place the mask on Plaintiff's face.

**RESPONSE**: Mr. Miller objects to this Interrogatory as overbroad and unduly burdensome. Subject to this objection, Mr. Miller states that the medical or scientific professionals should have an appropriate and current medical-related license or certificate issued by a government entity or recognized medical organization, and also have training and experience setting a gas-fitted mask on a person's face. Examples of such individuals include anesthesiologists, respiratory therapists, and industrial/chemical hygiene officers.

5. As to Plaintiff's pleaded alternative of using "medical professionals" to place the mask on Plaintiff Miller's face (Doc. 1, ¶ 193), and Plaintiff's response to Interrogatory 4, identify each "medical professional" qualified to place the mask on Plaintiff's face that is known to Plaintiff and is willing to participate in a judicial execution in their capacity as a medical professional.

**RESPONSE**: Mr. Miller objects to this Interrogatory as overbroad and unduly burdensome. Subject to this objection, Mr. Miller refers Defendants to the protocol for judicial executions in the State of Alabama, which expressly reference the participation of "qualified medical personnel," "trained medical professional[s]," and "physicians." Mr. Miller further refers Defendants to the public letter Defendant Hamm wrote to Defendant Ivey in February 2023 which states that the Alabama Department of Corrections recently "add[ed] to its pool of available medical personnel for executions," and "increase[ed] the number of medical personnel utilized by the Department for executions."

6. As to Plaintiff's pleaded alternative of using "medical professionals" to supervise the nitrogen flow rate during the execution (Doc. 1, ¶ 193), state, describe, and explain, in detail the minimum training, certifications, licensure, and/or experience that such "medical

professionals" would have to possess to be qualified to supervise the nitrogen flow rate during the execution.

**RESPONSE**: Mr. Miller objects to this Interrogatory as overbroad and unduly burdensome. Subject to this objection, Mr. Miller states that the medical professionals should have an appropriate and current medical-related license or certificate issued by a government entity or recognized medical organization, and also have training and experience supervising flow rate of nitrogen.

7. As to Plaintiff's pleaded alternative of using "medical professionals" to supervise the nitrogen flow rate during the execution (Doc. 1, ¶ 193), and Plaintiff's response to Interrogatory 6, identify each "medical professional" qualified to supervise the nitrogen flow rate during the execution that is known to Plaintiff and is willing to participate in a judicial execution in their capacity as a medical professional.

**RESPONSE**: Mr. Miller objects to this Interrogatory as overbroad and unduly burdensome. Subject to this objection, Mr. Miller refers Defendants to the protocol for judicial executions in the State of Alabama, which expressly reference the participation of "qualified medical personnel," "trained medical professional[s]," and "physicians." Mr. Miller further refers Defendants to the public letter Defendant Hamm wrote to Defendant Ivey in February 2023 which states that the Alabama Department of Corrections recently "add[ed] to its pool of available medical personnel for executions," and "increase[ed] the number of medical personnel utilized by the Department for executions."

8. Identify and describe the medical condition, or medical conditions, that Plaintiff contends caused Kenneth Smith superadded pain during his judicial execution by nitrogen hypoxia.

**RESPONSE**: Mr. Miller objects to this Interrogatory as not relevant to Mr. Miller's claims, and further objects to the Interrogatory as vague and overbroad, including because the terms "medical condition" and "medical conditions" are not defined. Mr. Miller also objects to this Interrogatory on the grounds that it incorrectly states that Mr. Miller "contends" a "medical condition" "caused Kenneth Smith superadded pain during his judicial execution by nitrogen hypoxia."

9. As to Plaintiff's response to Interrogatory 8 and any medical condition(s) identified, explain Plaintiff's factual basis and reasoning for alleging that these conditions were superadded to the process of death by means of nitrogen gas hypoxia.

**RESPONSE**: Mr. Miller objects to this Interrogatory as not relevant to Mr. Miller's claims, and further objects to the Interrogatory as vague and overbroad, including because the terms "medical condition" and "medical conditions" are not defined. Mr. Miller also objects to this Interrogatory on the grounds that it is based on the incorrect assumption that Mr. Miller "contends" a "medical condition" "caused Kenneth Smith superadded pain during his judicial execution by nitrogen hypoxia."

10. Explain in detail the basis for the allegation in Paragraph 85 of the Complaint that the "use of non-medical grade gas can have a significant impact on a person, like Mr. Miller, with a reactive airway disease such as asthma."

**RESPONSE**: Mr. Miller objects to the Interrogatory to the extent it seeks a narrative response that calls for an expert opinion. Moreover, Mr. Miller does not have access to his complete medical records. Subject to these objections, Mr. Miller states that he has had asthma since he was a child, and to this day, regularly suffers from symptoms of asthma. He has difficulty taking deep breaths. Mr. Miller experiences wheezing, and has reported wheezing to his medical providers in the past. Wheezing is a common symptom of reactive airway diseases such as asthma. Mr. Miller further states that he also experiences difficulty breathing, shortness of breath, and a tightness in the chest, all of which are also symptoms of reactive airway diseases such as asthma.

11. Describe, and explain in detail, the basis for the Plaintiff's allegation in Paragraph 116 of the Complaint that oxygen entrainment into the mask could increase the "risk of dire consequences, including the painful sense of suffocation."

**RESPONSE**: Mr. Miller objects to this Interrogatory as vague and overbroad, including because the term "oxygen entrainment" is not defined. Mr. Miller further objects to the Interrogatory as unduly burdensome. Subject to this objection, Mr. Miller states that Paragraph 116 of the Complaint in this action expressly references allegations that Kenneth Smith made in his complaint. Mr. Miller refers Defendants to the allegations in Mr. Smith's complaint.

12. As to Plaintiff's allegation in Paragraph 84 of the Complaint that "[n]itrogen gas has different purity grades for different uses," describe and explain all permissible uses of ultra-high purity (UHP) grade nitrogen gas.

**RESPONSE**: Mr. Miller objects to this Interrogatory as not relevant to Mr. Miller's claims, and further objects to the Interrogatory as vague, overbroad, including because the terms "all permissible uses" and "ultra-high purity (UHP)" are not defined. Mr. Miller also objects to the Interrogatory as unduly burdensome. Subject to these objections, Mr. Miller states that he is not aware of "all permissible uses" of "ultra-high purity (UHP) grade nitrogen gas."

Dated: July 10, 2024

Respectfully submitted,

/s/ *J. Bradley Robertson*

J. Bradley Robertson
Danner Kline
Bradley Arant Boult Cummings LLP
One Federal Plaza
1819 5th Ave. N.,
Birmingham, AL 35203
Tel: (205) 521-8188
Fax: (205) 488-6188
Email: brobertson@bradley.com
Email: dkline@bradley.com

Rachel C. Bramblett
Bradley Arant Boult Cummings LLP
Promenade Tower, 20th Floor.
1230 Peachtree St. NE
Atlanta, Georgia 30309
Tel: (404) 868-2100
Email: rbramblett@bradley.com

Daniel J. Neppl
Kelly Huggins
Mara E. Klebaner
Stephen Spector
Harry Dodsworth
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: dneppl@sidley.com
Email: khuggins@sidley.com
Email: mklebaner@sidley.com
Email: sspector@sidley.com
Email: hdodsworth@sidley.com

*Attorneys for Plaintiff Alan Eugene Miller*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 10, 2024, I served a copy of the foregoing via electronic mail to counsel of record.

/s/ *Stephen Spector*