**POSITION STATEMENT**



# Capital Punishment and Nurses' Participation in Capital Punishment

**Effective Date:**  2024
**Status:**  Reaffirmed
**Written by:**  ANA Center for Ethics and Human Rights
**Adopted by:**  ANA Board of Directors

## Purpose

The purpose of this position statement is twofold. First, to address the role of nurses in capital punishment, also referred to as the death penalty. Second, to express the American Nurses Association's (ANA) overall views on capital punishment. Since 1983, ANA has held that nurses should not assume any role in the capital punishment of an incarcerated individual. In 2016, this position statement extended the opposition to capital punishment.

## Statement of ANA Position

ANA opposes both capital punishment and nurse participation in capital punishment. Participation in executions, either directly or indirectly, is viewed as contrary to the fundamental goals and ethical traditions of the nursing profession. The *Code of Ethics for Nurses with Interpretive Statements* (Code) (ANA, 2015) brings to the forefront the importance of the nursing profession's taking a stance against any action that is contrary to the respect for human dignity of all individuals. Since ANA represents individual nurses, the professional organization must communicate to the public the values nurses consider central to the nursing profession (Code, Interpretive Statement 9.1). Within Code Provisions 8 and 9 (ANA, 2015), the principles of social justice speak to the importance of the nursing profession's taking a stance against the death penalty due to the preponderance of evidence against the fair application and effectiveness of capital punishment as a deterrent.

## Recommendations

In keeping with the nursing profession's commitment to caring; the preservation of human dignity and rights; the ethical principles of justice, nonmaleficence, beneficence, veracity, and fidelity; and the

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**

preservation of the trust that society accords the nursing profession, and in recognition of social inequalities within the judicial, criminal, and penal systems, ANA recommends that:

- • Nurses abide by the Code, which prohibits nurses from assuming any role in the capital punishment of an incarcerated individual.
- • Nurses strive to preserve the human dignity of an incarcerated individual regardless of the nature of the crime(s) they have committed.
- • Nurses abide by the social contract to facilitate healing and refuse to participate in capital punishment.
- • Nurses act to protect, promote, and restore the health of an incarcerated individual and provide comfort care at the end of life, if requested, including pain control, anxiety relief, or procuring the services of a chaplain or spiritual advisor.
- • If an individual who is a nurse chooses to witness an execution, that individual does not represent themselves as a nurse, does not represent the profession of nursing, and does not assume any nursing role in that execution.
- • Nurses help colleagues balance ethical obligations when death penalty cases cause moral turmoil.
- • Nursing leadership ought to create a work environment that allows nurses to abide by the recommendations of ANA, the American Correctional Health Services Association, and the National Commission on Correctional Health Care.
- • Nurses continue to be involved in national and international dialogue on political, scientific, ethical, legal, social, and economic perspectives leading to legislation that would abolish the death penalty.
- • Nurses as individuals and as a professional community maintain awareness that any nurse participation could contribute to the public's acceptance of the death penalty, and their nonparticipation may, in fact, contribute to rejection of the death penalty.

# Background

Human rights organizations state that the use of capital punishment is a denial of the ultimate human right. The ethical standards of the nursing profession require that all members of the profession refuse to use their professional knowledge, skills, and abilities to kill, torture, or degrade another human being. In order to retain professional dignity and ethical stature, the nursing profession must agree to oppose any aspect of or involvement in capital punishment.

# History/Previous Position Statements

*Code of Ethics for Nurses with Interpretive Statements* (1985, 2001, 2015)

ANA Position Statement: "Nurses' Participation in Capital Punishment" (1983, 1984, 1988)

ANA Position Statement: "Nurses' Role in Capital Punishment" (2010, 2016)

ANA House of Delegates Resolution: Acts of Torture and Abuse (2005)

ANA Position Statement: "The Nurse's Role in Ethics and Human Rights: Protecting and Promoting Individual Worth, Dignity, and Human Rights in Practice Settings" (2010, 2016)

ANA Position Statement: "Euthanasia, Assisted Suicide, and Aid in Dying" (2013)

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
www.nursingworld.org

# Supportive Material

Amnesty International "opposes the death penalty in all cases without exception regardless of the nature or circumstances of the crime; guilt, innocence or other characteristics of the individual; or the method used by the state to carry out the execution" (Amnesty International, 2015, p. 2).

At the end of 2021, more than two-thirds (252) of the world's countries had abolished the death penalty in law or practice. Fifty-five countries still retained the death penalty. The United States is among the minority of countries that retain the death penalty. (https://worldcoalition.org/2022/06/09/annual-report-death-penalty-2021/)

Amnesty International recorded **579 executions** in **18 countries** in 2021, an increase of **20% from the 483** recorded in 2020. This figure represents the second lowest number of executions recorded by Amnesty International since at least 2010 ("Death Penalty 2021: Facts and Figures," Amnesty International, 2022, https://www.amnesty.org/en/latest/news/2022/05/death-penalty-2021-facts-and-figures.

Public opinion polls and a historical index of polling on capital punishment found that support for the death penalty in the United States was the lowest it has been in a half-century. While major polling organizations differed on the most appropriate polling method to measure views about capital punishment, they agreed that their poll results reflect a sustained erosion of public support for the death penalty ("The Death Penalty in 2021: Public Opinion," Death Penalty Information Center, 2022, https://deathpenaltyinfo.org/facts-and-research/dpic-reports/dpic-year-end-reports/the-death-penalty-in-2021-year-end-report.

In the United States, capital punishment is currently authorized in 27 states (54%), by the federal government, and by the U.S. military. Twenty-three states and the District of Columbia (46%) have abolished the death penalty (States and Capital Punishment: National Conference of State Legislatures, 2022, https://www.ncsl.org/research/civil-and-criminal-justice/death-penalty.aspx. In the past two decades, New Mexico (2009), Illinois (2011), Connecticut (2012), Maryland (2013), New Hampshire (2019), Colorado (2020), and Virginia (2021) have legislatively abolished the death penalty, replacing it with a sentence of life imprisonment with no possibility for parole. The most important factor in determining whether someone will receive a death sentence is not the crime they are accused of but the jurisdiction where the crime took place ("Parkland shooting case will test death penalty opponents' resolve. But the act must end," Dehghani-Taft, Satterberg, and Krinsky, THINK: Opinions, Analysis, Essays, 2022, https://www.nbcnews.com/think/politics-policy/parkland-school-shooting-juror-search-will-stir-death-penalty-debate-rcna24651).

Many professional health care organizations, such as the American Medical Association (2016), American Psychiatric Association (2014), American Society of Anesthesiologists (2010), American Pharmacists Association (2015), and National Conference of Correctional Health Care, address the role of health care professionals in capital punishment. The World Medical Association's (WMA) resolution on physician participation in capital punishment avers that there is universal agreement that physicians must not participate in executions because such participation is incompatible with the physician's role as healer and that the use of a physician's knowledge and clinical skill for purposes other than promoting health, well-being and welfare undermines a basic ethical foundation of medicine. The WMA affirms that it is unethical for physicians to participate in capital punishment in any way or during any step of the execution process, including its planning and the instruction and/or training of persons to perform executions (WMA, 2018). In summary, health care professionals' participation in capital punishment is a breach of professional ethics, but some organizations have gone further and taken a stance against the death penalty itself.

Historically, the role of the nurse has been to promote, preserve, and protect human health. The Code outlines nursing's commitment to the "welfare of the sick, injured, and vulnerable in society and to social

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**

justice" (ANA, 2015, p. vii). This array of concerns extends to the community and "encompasses the...protection, promotion, and restoration of health" (p. vii). The Code is grounded in the basic principles of ethics. Furthermore, "nurses must always stress human rights protection with particular attention to preserving the human rights of vulnerable groups such as the poor, the homeless, the elderly, the mentally ill, [incarcerated individual], refugees, women, children, and socially stigmatized groups" (ANA, 2015, p. 33). Addressing end-of-life care, the ANA position statement "The Nurse's Role When a Patient Requests Medical Aid in Dying" (2019) states, "Nurses are ethically prohibited from administering medical aid in dying medication" (p. 2). ANA's position statement "The Nurse's Role in Ethics and Human Rights: Protecting and Promoting Individual Worth, Dignity, and Human Rights in Practice Settings" (2010) suggests we must go "beyond the rhetoric of universal human rights to include attention to duties, social justice, and interdependence" (p. 3). The obligation for nurses to refrain from causing death is a long-standing and explicit ethical norm. The Code states that the "nurse should provide interventions to relieve pain and other symptoms in the dying patient consistent with palliative care practice standards and may not act with the sole intent to end life" (ANA, 2015, p. 3).

ANA articulates its ethical stance as opposed to capital punishment for the following reasons:

- The death penalty is racially biased. Both in the United States and around the world, it is discriminatory and used disproportionately against the poor, minorities, and members of minority racial, ethnic, and religious communities. African American defendants are four times more likely to receive a death sentence than are white defendants (Amnesty International, 2015; Dieter, 1998). The Death Penalty Information Center (2015b) has found correlations between sentencing and race.

- The death penalty can claim innocent lives. Since 1973, more than 184 incarcerated individuals have been exonerated and freed from death row (Death Penalty Information Center, 2022). Since humans are fallible, the risk of executing the innocent can never be eliminated.

- The death penalty costs more and diverts resources from genuine crime control, rehabilitation, and restoration for victims. Costs associated with putting a person on death row, including criminal investigations, lengthy trials, and appeals, are leading many states to reevaluate and reconsider having this flawed and unjust system on the books. In California, the cost of confining one incarcerated individual on death row is $90,000 more per year than the cost of maximum security prison (Death Penalty Information Center, 2009a, p. 16). In response to an ACLU Freedom of Information Act lawsuit, the U.S. government's January 2021 disclosures detailed the cost absorbed by taxpayers as a result of conducting executions during the pandemic. It outlined the average annual federal incarceration cost for an incarcerated individual was $37,449. The cost to U.S. taxpayers for each execution exceeded the cost of incarcerating an individual in a federal prison for 25 years (ACLU, 2021).

- The death penalty is not a deterrent. In April 2012, the National Research Council concluded that studies claiming the death penalty affects murder rates were "fundamentally flawed" because they did not consider the effects of noncapital punishment and used "incomplete or implausible models" (Death Penalty Information Center, 2015d). A 2009 survey of criminologists revealed that over 88% believed the death penalty was *not* a deterrent to murder (Death Penalty Information Center, 2015e). According to Amnesty International, U.S. studies have shown that, under past and present death penalty statutes, the murder rate in death penalty states has differed little from that in other states with similar populations and social and economic conditions (WMA, 2012).

- The death penalty is arbitrary and unfair. Almost all incarcerated individuals on death row could not afford their own attorneys at trial. Justice Breyer, in his dissent in the 2015 U.S. Supreme Court decision on lethal injection drugs, pleaded for someone to bring a case where

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**

the Court could reconsider capital punishment for the first time since 1977, noting that the death penalty is both cruel (massive inequities and the likelihood of false conviction and execution) and unusual (barely one-third of the U.S. population now lives in states with an active death penalty) (Shapiro, 2015).

- The death penalty disregards mental illness. The threat of execution is unlikely to deter those who suffer from mental illness, those with developmental delays, or those who do not fully understand the gravity of their crimes. In 2006, the American Bar Association passed Resolution 122A, exempting those with severe mental illness from the death penalty. An almost identical resolution has been endorsed by the American Psychiatric Association, American Psychological Association, and National Alliance for the Mentally Ill (Death Penalty Information Center, 2015e).

- The death penalty differs from state to state; therefore, whether a person is executed (loses their life) depends on geography. A just system ought not to have death sentences concentrated in only one region. In 1976, the Supreme Court reinstated capital punishment. According to the Death Penalty Information Center (2022), more than two-thirds of U.S. states—36 out of 50—have either abolished the death penalty or have not carried out an execution in at least 10 years, and an additional two states have not had an execution in at least five years, for a total of 38 states with no death penalty or executions in that time.

- The death penalty undermines human dignity. It is based on the religious premise of vengeance ("an eye for an eye"), rather than on fair distribution of justice as outlined in the seven items above. To kill the person who has killed someone is simply to continue the cycle of violence. It is an ultimate violation of human rights. All incarcerated individuals remain human beings and are deserving of being treated with human dignity.

- Some death penalty executions have resulted in the suffering of incarcerated individuals. After a number of poorly managed executions, in which the person being executed agonized for several minutes, the U.S. death penalty debate has been revived. Also, states have struggled to obtain the drugs necessary for lethal injections, as European and some U.S. suppliers refused to sell the drugs if they are being used for executions.

ANA's opposition extends to all forms of participation by nurses in capital punishment by whatever means, whether under civil or military legal authority. The ethical principle of nonmaleficence requires that nurses act in such a way as to prevent harm, not inflict it. The act of participating in capital punishment clearly inflicts harm; nurses are ethically bound to abstain from any activities involved in carrying out the death penalty process. Nurses must not participate in capital punishment, whether by chemical, electrical, or mechanical means.

Nurses, in their professional roles, including advanced practice, should not take part in assessing the incarcerated individual or the equipment; supervising or monitoring the procedure or the incarcerated individual; procuring, prescribing, or preparing medications or solutions; inserting the intravenous catheter; injecting the lethal solution; attending or witnessing the execution; or pronouncing the incarcerated individual dead. Nurses should not train paraprofessionals in any of the activities listed above for the purpose of their use in capital punishment. In accordance with the Code, nurses should not *assist, supervise, or contribute to the ability of another to directly cause the death of an incarcerated individual*.

## Summary

ANA opposes the death penalty. ANA opposes nurse participation in any phase of capital punishment. Participation of nurses in capital punishment is contrary to the ethical precepts of the Code and several ANA position statements. While many states still have legalized the death penalty, nurses should strive for social changes that recognize the human dignity of all individuals, including incarcerated individuals, and uphold the right to be free from cruel and unusual punishment.

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**

# References

American Correctional Health Services Association (ACHSA). (1996). *Mission and ethics statement*. Retrieved from http://www.achsa.org/mission-ethics-statement/.

American Medical Association. (2016). Chapter 9: Opinions on Professional Self-regulation, Provision 9.7.3., p. 23-26. Retrieved from https://www.ama-assn.org/sites/default/files/media-browser/code-of-medical-ethics-chapter-9.pdf

American Nurses Association. (2001). *Code of ethics for nurses with interpretive statements.* Silver Spring, MD: Author.

American Nurses Association. (2015*). Code of ethics for nurses with interpretive statements*. Silver Spring, MD: www.nursingworld.org/code-of-ethics.

American Nurses Association. (1991). *Ethics and human rights (position statement)*. Washington, DC: Author.

American Nurses Association. (2013). *Euthanasia, assisted suicide, and aid in dying*. Silver Spring, MD: Author.

American Nurses Association. (1983). *Nurses' participation in capital punishment.* Washington, DC: Author.

American Nurses Association. (1984). *Nurses' participation in capital punishment.* Washington, DC: Author.

American Nurses Association. (1988). *Nurses' participation in capital punishment.* Washington, DC: Author.

American Nurses Association. (2010). *Nurses' role in capital punishment*. Silver Spring, MD: Author.

American Nurses Association. (2010). *The nurse's role in ethics and human rights: Protecting and promoting individual worth, dignity, and human rights in practice settings*. Silver Spring, MD: Author.

American Nurses Association. (2013). *Correctional nursing*: *Scope and standards of practice.* Silver Spring, MD: Nursesbooks.org.

American Psychiatric Association. (2014). *Position statement on moratorium on capital punishment in the United States.* Retrieved from https://psychiatry.org/File%20Library/About-APA/Organization-Documents-Policies/Policies/Position-2014-Moratorium-Capital-Punishment.pdf?_ga=1.181328367.993038841.1481053743-Policies/Policies/Position-2014-Moratorium-Capital-Punishment.pdf?_ga=1.181328367.993038841.1481053743.

American Psychological Association. (2001). *The death penalty in the United States*. Retrieved from http://www.apa.org/about/policy/death-penalty.aspx.

American Public Health Association. (1986) *Abolition of the death penalty*. Retrieved from http://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2014/07/14/13/50/abolition-of-the-death-penalty.

American Public Health Association. (2001). *Participation of health professionals in capital punishment.* Retrieved from http://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2014/07/28/13/02/participation-of-health-professionals-in-capital-punishment.

American Society of Anesthesiologists. (2010). *Professional standing policy: Anesthesiologists and capital punishment.* Retrieved from http://www.deathpenaltyinfo.org/documents/CapitalPunishmentCommentary.pdf.

Amnesty International.org. (2014). Death sentences and executions in 2014. Retrieved from https://www.amnesty.org/en/latest/research/2015/02/death-sentences-and-executions-2014.

Amnesty International.org. (2015). *Report: Death sentences and executions in 2014.* Retrieved from http://www.amnestyusa.org/research/reports/death-sentences-and-executions-2014.

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**

Baumgartner, F.R. (October, 2010). *The geography of the death penalty*. Retrieved from http://www.unc.edu/~fbaum/Innocence/NC/Baumgartner-geography-of-capital-punishment-oct-17-2010.pdf.

*Baze v. Rees*, U.S. 553 (2008).

Burton, W.C. (2007). *Burton's legal thesaurus*. Retrieved from http://legal-dictionary.thefreedictionary.com/capital+punishment

Death Penalty Information Center. (2009a). *Smart on crime: Reconsidering the death penalty in a time of economic crisis.* Retrieved from http://www.deathpenaltyinfo.org/documents/CostsRptFinal.pdf.

Death Penalty Information Center. (2009b). *Facts about the death penalty.* Retrieved from http://www.deathpenaltyinfo.org/documents/FactSheet.pdf.

Death Penalty Information Center. (2015a). *States with and without the death penalty*. Retrieved from http://www.deathpenaltyinfo.org/states-and-without-death-penalty.

Death Penalty Information Center. (2015b). *Arbitrariness*. Retrieved from http://www.deathpenaltyinfo.org/arbitrariness.

Death Penalty Information Center. (2015c). *Innocence and the death penalty*. Retrieved from http://www.deathpenaltyinfo.org/innocence-and-death-penalty.

Death Penalty Information Center. (2015d). *Discussion of recent deterrence studies*. Retrieved from http://www.deathpenaltyinfo.org/discussion-recent-deterrence-studies.

Death Penalty Information Center. (2015e). *Study: 88% of criminologists do not believe the death penalty is an effective deterrent.* Retrieved from http://www.deathpenaltyinfo.org/study-88-criminologists-do-not-believe-death-penalty-effective-deterrent.

Death Penalty Information Center. (2015f). *Mental illness and the death penalty*. Retrieved from http://www.deathpenaltyinfo.org/mental-illness-and-death-penalty.

de Vogue, A. (March 16, 2015). *New documents reveal botched Oklahoma execution details.* Retrieved from http://www.cnn.com/2015/03/16/politics/clayton-lockett-oklahoma-execution/.

Dieter, R. (1998). *The death penalty in black and white: Who lives, who dies, who decides.* Death Penalty Resource Center. Retrieved from http://www.deathpenaltyinfo.org/death-penalty-black-and-white-who-lives-who-dies-who-decides.

*Ford vs. Wainwright*, 477 U.S. (1986).

*Furman v. Georgia*, 408 U. S. 238 (1972).

Garner, B. A. (2004). *Black's Law Dictionary*, (Ed.). (8th ed.). (p. 223). St Paul, MN: West Group.

*Glossip v. Gross*, 576 U.S. (2015).

*Gregg v. Georgia*, 428 U. S. 153 (1976).

Hall, K. L., Ely, J. W., & Grossman, J. B. (2005). *The Oxford Companion to the Supreme Court of the United States*. Oxford University Press on Demand.

International Council of Nurses. (2012). *Torture, death penalty and participation by nurses in executions.* Retrieved from http://www.icn.ch/images/stories/documents/publications/position_statements/E13_Torture_Death_Penalty_Executions.pdf.

Jones, J.M. (October 23, 2014). *Americans' support for death penalty stable*. Gallup. Retrieved from http://www.gallup.com/poll/178790/americans-support-death-penalty-stable.aspx?version=print.

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**

Mental Health America. (2011). *Position statement 54: Death penalty and people with mental illness* Retrieved from http://www.mentalhealthamerica.net/positions/death-penalty.

National Commission on Correctional Health Care. (2014). *Standards for health services in prisons.* Chicago, IL: Author. Retrieved from http://orders.ncchc.org/core/store/product.aspx?prod=01tF0000002xiaKIAQ.

Schubert, K. (May 20, 2015). Conservative Nebraska moves toward death penalty repeal. Retrieved from http://www.reuters.com/article/2015/05/20/us-usa-nebraska-deathpenalty-idUSKBN0O525X20150520.

Shapiro, B. (June, 2015). The good news buried in the Supreme Court's lethal injection decision. *The Nation.* Retrieved from http://www.thenation.com/article/the-good-news-buried-in-the-supreme-courts-lethal-injection-decision/.

Sheriff, N. (2014). *United Nations vote on death penalty moratorium puts US in awkward spot.* Retrieved from http://america.aljazeera.com/articles/2014/12/17/death-penalty-unitednations.html.

U.S. CONST. amend VIII.

U.S. CONST. amend XIV.

World Medical Association. (2012). *White paper on ethical issues concerning capital punishment.* Retrieved from http://www.wma.net/en/20activities/20humanrights/50other/Final_WMA_white_Paper_capital_punishment-June20121.pdf.

**ANA acknowledges Vicki Lachman, Martha Turner, Jill Winland-Brown and Laurie Badzek who contributed to the drafting of this document on behalf of the ANA Ethics Advisory Board.**

8515 Georgia Avenue, Suite 400
Silver Spring, MD 20910
**www.nursingworld.org**